IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEE BOONMA, as              §
Next Friend of John Doe,    §
a Minor,                    §
                            §
              Plaintiff,    §
                            §   Civil Action No. 3:05-CV-0684-D
VS.                         §
                            §
NICHOLAS BREDIMUS,          §
                            §
              Defendant.    §

MEMORANDUM OPINION
AND ORDER

A Thailand citizen sues an American citizen in this forum to recover under 18 U.S.C. § 2255 for sexually-predatory conduct that the American citizen allegedly committed in Thailand. Defendant moves to dismiss based on the doctrine of *forum non conveniens*. Concluding that the private and public interest factors strongly demonstrate that the case should be litigated in Thailand, the court grants the motion. In doing so, the court emphasizes that the Thailand court is an available and adequate forum. This decision does not unduly benefit a defendant who has been accused of heinous sexually-predatory conduct.

I

Plaintiff Dee Boonma ("Boonma"), a Thailand citizen, as next friend of John Doe ("Doe"), a minor, sues defendant Nicholas Bredimus ("Bredimus"), a Texas resident incarcerated in Kentucky, under 18 U.S.C. § 2255(a),[1] alleging that Bredimus is liable for

---

[1]18 U.S.C. § 2255(a):

Any minor who is a victim of a violation of

injuring Doe in 2001 at a Thailand hotel by engaging with him in non-consensual sexual acts, which Bredimus videotaped.   Boonma asserts that Bredimus violated 18 U.S.C. § 2241,[2] which prohibits crossing a state line with intent to engage in a sexual act with a person under age 12; 18 U.S.C. § 2251,[3] which prohibits production

section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation may sue in any appropriate United States District Court and shall recover the actual damages such minor sustains and the cost of the suit, including a reasonable attorney's fee.   Any minor as described in the preceding sentence shall be deemed to have sustained damages of no less than $50,000 in value.

[2]18 U.S.C. § 2241(c):

Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years . . . shall be fined under this title, imprisoned for any term of years or life, or both.

[3]18 U.S.C. § 2251(c):

(1)   Any person who, in a circumstance described in paragraph (2), employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, any sexually explicit conduct outside of the United States, its territories or possessions, for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e).   (2) The circumstance referred to in paragraph (1) is that- (A) the person intends such visual depiction to be transported to the United States, its territories or possessions, by any means, including by computer or mail; or (B) the person transports such visual depiction to the United States, its territories or possessions, by any means, including by computer or mail.

- 2 -

or distribution of child pornography; and 18 U.S.C. § 2423,[4] which prohibits traveling in interstate or foreign commerce for the purpose of engaging in illicit sexual conduct; and that he is liable for intentional infliction of emotional distress. Bredimus moves to dismiss this action based on *forum non conveniens.*

II

> Under the federal doctrine of *forum non conveniens*, when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994) (internal quotations omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). The doctrine of *forum non conveniens* applies "in

---

[4]18 U.S.C. § 2423(b):

> A person who travels in interstate commerce or travels into the United States, or a United States citizen or . . . who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(c):

> Any United States citizen . . . who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

all cases regardless of their jurisdictional bases or subject matter." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1163 (5th Cir. 1987) (en banc) (emphasis omitted), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *opinion reinstated in part on other grounds*, 883 F.2d 17 (5th Cir. 1989) (en banc) (per curiam).  The court exercises its discretion based on consideration of private and public factors that trace their origin to *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  Showing some deference to the plaintiff's choice of forum, the court must consider the following private interest factors:

> [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; [3] probability of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforc[ea]bility of a judgment if one is obtained.

*Robinson v. TCI/US W. Communications, Inc.*, 117 F.3d 900, 908 (5th Cir. 1997) (quoting *Air Crash*, 821 F.2d at 1162);  *see also Am. Dredging*, 510 U.S. at 448.  The public interest factors include (1) the administrative difficulties courts face when litigation is piled up in congested centers instead of being handled at its origin; (2) the burden of jury duty imposed upon the people of a community that has no relation to the litigation; (3) in cases that touch the affairs of many persons, the interest in holding the trial in their view and reach rather than in remote parts of the

country where they can learn of it by report only; (4) the local interest in having localized controversies decided at home; and (5) the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. *Am. Dredging*, 510 U.S. at 448-49 (quoting *Gulf Oil*, 330 U.S. at 508-09).

This court must follow a controlling procedural framework in applying the principles of *forum non conveniens* so that it exercises structured discretion. *See Air Crash*, 821 F.2d at 1165. The court first decides whether an available and adequate forum exists. *Id.* A foreign forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *Id.* A defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of *forum non conveniens* analysis. *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983). A foreign forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Air Crash,* 821 F.2d at 1165 (citations omitted). If the available remedy is "so clearly inadequate or unsatisfactory such that it is no remedy at all," however, this can be given "substantial weight" by the court. *Id.* at 1164 n.27 (citing *Piper,* 454 U.S. at 254). If the court concludes the foreign forum is both available and adequate, it must then address the relevant factors of private interest, giving

appropriate deference to plaintiff's initial choice of forum.  *Id*. at 1165.  The strong presumption in favor of plaintiff's choice of forum applies with less force, and is given less deference, when the plaintiff is foreign.  *Piper*, 454 U.S. at 255-56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable.  Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").  If the court determines that the private interests do not weigh in favor of dismissal, it must then consider the public interest factors.  *Air Crash*, 821 F.2d at 1165.

Bredimus has the burden of establishing that the doctrine of *forum non conveniens* applies.  *See Robinson*, 117 F.3d at 907.  His "burden of persuasion runs to all the elements of the forum non conveniens analysis."  *Air Crash*, 821 F.2d at 1164.  While the burden is on the movant to establish that an alternative forum would be clearly more convenient, he need not submit overly-detailed affidavits, such as those that identify all the witnesses he would call and the testimony he would offer.  *See Piper,* 454 U.S. at 258.  The *forum non conveniens* motion is made "precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview," such that "[r]equiring extensive investigation would defeat the purpose of [the] motion."  *Id.*  Of course, the movant must provide "enough information to enable the District Court to

balance the parties' interests." *Id*. The court must review the motion in light of the status of the case at the time the motion was filed. *See Air Crash*, 821 F.2d at 1166.

Bredimus contends this case involves conduct that occurred exclusively in Thailand, that an adequate alternative forum is available in Thailand, and that the private interest factors, particularly ease of access to evidence and availability of witnesses, and public interest factors, including the interest of a Thailand court in hearing localized controversies and the problem of an American court applying unfamiliar Thailand law, make Thailand a more convenient forum. Boonma responds that dismissal of this case would thwart Congress' intent in enacting 18 U.S.C. § 2255, which provides a civil remedy to victims of child sex tourism and other sexual offenses. She also argues that dismissal would frustrate the public policy of holding sex offenders accountable and deterring similar conduct by others.

III

The court first considers whether Thailand is an available and adequate forum. Bredimus contends the forum is available because he has stipulated to the jurisdiction of Thailand courts and Boonma resides there. The case and all parties involved can thus come within the jurisdiction of the Thailand forum. Bredimus posits that the forum is adequate because Thailand law recognizes causes of action for injuries to one's life, body, health, or rights, and the right to sue for intangibles, such as emotional distress, loss of consortium, and pain and suffering. Thailand law does not,

- 7 -

however, provide for punitive damages for the type of conduct that Boonma alleges.

Boonma does not appear to address the availability or adequacy of Thailand as a forum.  Instead, she argues only that dismissal of this action would violate Congress' intent in enacting 18 U.S.C. § 2255, which was to create a civil remedy in United States courts for foreign victims of child sex tourism, such as Doe.

Although a Thailand forum may not be as favorable to Boonma as is this court, she will not be deprived of all remedies, nor is there reason to think she will be treated unfairly.  Because Thailand can exercise jurisdiction over both Bredimus and Boonma, and since neither will be deprived of all remedies or treated unfairly, the court holds that Thailand is an available and adequate forum.[5]

IV

The court now examines the private interest factors.

A

Bredimus contends that a Thailand forum would be more convenient because of greater ease of access to the sources of

---

[5]Bredimus is presently incarcerated in a federal prison in Kentucky, which neither party mentions in questioning the availability of an alternative forum in Thailand.  His projected release date is within the next 18 months, at which point it appears he would be able to appear in court in Thailand.  There does not appear to be a problem concerning his ability to submit to Thailand jurisdiction.  Nor should there be a statute of limitations problem if trial cannot proceed until Bredimus is released, because Doe can sue any time within one year of reaching the age of majority, which will not occur until long after Bredimus is released.

proof.  He asserts that all the relevant conduct in this case occurred in Thailand, all witnesses, including the other alleged victims, hotel employees, and medical providers, are in Thailand, and all physical evidence and evidence of medical reports and expenses is in Thailand.  This is the extent of his argument that a Thailand forum would be more convenient due to easier access to sources of proof.  Boonma does not appear to address the location of the sources of proof.

Chief Judge Fish recently dismissed on the basis of *forum non conveniens* another lawsuit brought by Bredimus' other alleged victims, which arises out of the same set of events.  *See Punyee ex rel. Doe #1 v. Bredimus*, 2004 WL 2511144 (N.D. Tex. Nov. 5, 2004) (Fish, C.J.).  In addition to the witnesses already mentioned, Chief Judge Fish noted that other critical witnesses were also located in Thailand, such as "the Thai national and local authorities who investigated the incident[ ] [and] the alleged procurers who 'lured' the children into Bredimus's hotel room." *Id*. at *6.  He also pointed out, however, that not every source of proof supported Thailand as the more convenient forum.  *Id*. Apparently, some tangible and documentary evidence relevant to the present case was transferred to the United States for use in prosecuting Bredimus criminally.  *See id*.  According to the *Punyee* plaintiffs, this evidence includes (1) a videotape that Bredimus filmed while he engaged in sexually-explicit acts with the victims, (2) the video camera and the digital camera Bredimus used while he engaged in the sexually-explicit acts, (3) digital images and color

copies of the images from the digital camera, (4) fingerprint analysis results, (5) documents relating to Bredimus' travel in Thailand, and (6) documents relating to the Thailand police investigation and court proceedings. *Id.* Although some evidence was more readily available in the United States than in Thailand, Chief Judge Fish held that the factor considering access to sources of proof weighed in favor of dismissal, because "most of the relevant information and key players, with the exception of Bredimus, [were] located in Thailand." *Id.*

Given that Boonma, all the non-party witnesses, and much of the relevant physical and documentary evidence——particularly the critical evidence relating to Doe's damages——are located in Thailand, this factor favors litigating the case there.

B

The court next considers the availability of compulsory process for ensuring attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses. Neither party has briefed this issue thoroughly. As to unwilling witnesses, neither party has identified any witnesses who would be within subpoena range of this court. *See* Fed. R. Civ. P. 45(b)(2), (c)(3)(A)(ii), and (c)(3)(B)(iii). The possible witnesses mentioned besides the parties include the other victims, Thailand national and local authorities, medical providers, and hotel employees, all of whom are located in Thailand. The affidavit of Professor Chaninat Leeds does not mention the power of Thailand courts to subpoena unwilling witnesses located in Thailand, and neither party discusses whether

- 10 -

these witnesses would be willing to testify.

The cost of obtaining attendance of willing witnesses points strongly in favor of litigating this case in Thailand.  Neither party refers to any possible witnesses who reside in the United States, other than the defendant.  Bredimus asserts that it would be extremely expensive to litigate this dispute in Texas because all the potential witnesses are in Thailand.  Although Bredimus does not identify any of the potential witnesses already mentioned by name, there is good reason to believe they all reside in Thailand, so the cost of obtaining the attendance of these parties should be far lower in Thailand than in Texas.  Further, Thailand law does not specifically authorize depositions, so it could be difficult to obtain deposition testimony for use in this court should it retain jurisdiction here.  Boonma does not address this issue in her brief.

Because of this court's inability to compel attendance of unwilling witnesses and the high cost of obtaining attendance of willing witnesses, this factor favors litigating this dispute in Thailand.

C

Because the factor that considers probability of view of the premises is not relevant to this case, the court need not consider it.

D

The court next evaluates all practical considerations of efficiency and expense.  Bredimus asserts that this factor favors

the Thailand forum because any documentary evidence, including reports from the Thailand police authorities, medical providers, or hotel employees, would have to be translated into English for trial in Texas. Boonma does not address this issue in her brief. Because most of the documentary evidence is written in Thai, and all witnesses except the defendant are Thai, this factor favors litigating the case in Thailand.

E

The court holds that the private interest factors, viewed together, weigh heavily in favor of litigating the case in Thailand.

V

When the private interest factors do not weigh in favor of dismissal, the court must consider the public interest factors. *Robinson*, 117 F.3d at 908. Although the court is not obligated to consider the public interest factors when the balance of private interest factors favors dismissal, the court will do so. *See Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1550-51 (5th Cir. 1991) (holding that if private interest factors weigh in favor of dismissal, no further inquiry need be made). "[E]ven when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained." *Air Crash*, 821 F.2d at 1165-66 (quoting

- 12 -

*Pain v. United Techs. Corp.*, 637 F.2d 775, 792 (D.C. Cir. 1980)).

A

The court first considers administrative difficulties arising from congested courts.  Neither party addresses this issue in the briefs, and there is no indication in the record that this court is more congested than is the Thailand court that would hear this case.  *See Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998) (holding that this factor favored neither British nor American forum where there was no indication in record that British courts are more or less congested than American courts).  Because Bredimus has the burden of showing that this factor favors dismissal, the court holds that it supports litigating the case in Texas.

B

The court next evaluates the burden of jury duty.  "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Gulf Oil*, 330 U.S. at 508-09.  Texas jurors have little connection with the case because the plaintiff is Thai and all the conduct occurred in Thailand.  *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 673 n.10 (5th Cir. 2003) (citing *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 804-05 (7th Cir. 1997) (noting that Indiana residents have "a mere passing interest" where a foreign plaintiff is injured in a foreign land)).  Because it involves criminal conduct by a Texas resident, Texas jurors have some interest in the case, but it is no more than the "little" public interest to which *Air Crash*

refers.  *See Air Crash*, 821 F.2d at 1166.  This factor therefore favors litigating the case in Thailand.

C

The court turns next to the interest of holding the trial within the view and reach of those persons whose affairs it touches.  The case touches the affairs of many Thailand citizens, including the other victims and their parents, the Thailand national and local authorities who investigated the incident, and the employees of the hotel where the conduct occurred.  By contrast, this incident marginally touches the affairs of persons in the United States except the defendant.  This factor therefore heavily favors litigating the case in Thailand.

D

The court next addresses the interest in having localized controversies decided at home.  There is a strong connection between the case and Thailand because the victim is Thai and all the conduct occurred in that country.  Predatory sexual behavior directed at Thailand children is obviously a problem that Thailand has a strong interest in combating.  *See Vasquez*, 325 F.3d at 673 & n.10 (holding that country where plaintiff hails from and suffered injury has obvious interest in protecting rights and welfare of its citizens).  The only connection between the case and Texas is that the defendant is a Texas resident (although he is currently incarcerated in Kentucky).  Although Texas has an interest in deterring its citizens from committing sex crimes abroad, Thailand's interest in this case is considerably stronger.

- 14 -

*See Punyee,* 2004 WL 2511144 at *8 ("[w]here aircraft accident occurred in a foreign country and victims were all citizens of that country, and only the aircraft manufacturer and propeller manufacturer were American citizens, foreign forum had a 'very strong interest' in the case" (citing *Piper,* 454 U.S. at 260)). This factor therefore favors litigating the case in Thailand.

E

The court finally considers the avoidance of unnecessary problems in conflicts of law and the application of foreign law. Because Boonma asserts both federal statutory and state-law claims, this court would be required to apply two different sets of choice-of-law provisions to determine the law that applies. Were the court's jurisdiction based solely on diversity of citizenship, it would apply the choice-of-law rules of Texas, the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). In federal question cases such as this one, however, the court must apply federal common law choice-of-law rules to determine what substantive law applies to the claims arising under federal statutes. *See Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 795 (2d Cir. 1980). The *Erie* and *Klaxon* principles still apply to pendent state-law claims in cases in which federal jurisdiction is premised on a federal statute, so the court must apply the choice-of-law rules of the state in which it sits to determine the substantive law that applies to Boonma's claim for intentional infliction of emotional distress. *See Amoco Chem. Co. v. Tex Tin Corp.,* 925 F. Supp. 1192, 1202 n.9 (S.D. Tex.

- 15 -

1996) (citing *Doty v. Sewall*, 908 F.2d 1053, 1063 (1st Cir. 1990) (noting "it is well settled" that *Erie* applies to pendent claims asserted in federal question cases)).

Were this case tried in Texas, Thailand law would likely apply to the claim for intentional infliction of emotional distress. To resolve choice-of-law questions, Texas courts apply the "most significant relationship" test set out in Restatement (Second) Conflict of Laws §§ 6 and 145. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 (Tex. 1984) ("[I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."). The factors the court considers include (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied. Restatement (Second) Conflict of Laws § 6(2) (1971). The contacts to be considered in applying these principles include (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(4) the place where the relationship, if any, between the parties is centered. *Id.* § 145(2).

Applying this test, Thailand clearly has the most significant relationship to this case. *Cf. Punyee*, 2004 WL 2511144, at *8. Of the relevant contacts, the injury and conduct occurred in Thailand, and the relationship between the parties is centered there. The residence of the parties does not favor either Texas or Thailand because one party resides in each forum. Looking to the principles that the court's choice of law should further, it is clear that Thailand has a stronger policy interest in the case: that of protecting its children from sex crimes. In *Punyee* Chief Judge Fish noted the incentive that these victims have to sue in Texas due to the availability of punitive damages awards under Texas law. *Id.* at *9. He also pointed out, however, that "[w]ere the court to apply Texas law as a means of righting any perceived inequities of Thai law, it would be treading upon the policy choices the Thai government has made in the competing objectives and costs of tort law." *Id.*; *see also Vasquez*, 325 F.3d at 675 & n.14 (holding that application of Texas law, where there was little justification for doing so to right any perceived inequities in Mexico's disparate provision of wrongful death damages, would undercut policy decision made by the Mexican people through their duly-elected lawmakers). *Punyee* held that applying Thailand law would promote "[u]niformity and accommodation of the competing policies of the two nations." *Punyee*, 2004 WL 2511144, at *9; *see also Vasquez*, 325 F.3d at 675 ("Uniformity, predictability, and accommodation of the competing

policies of the two nations favor applying Mexican law.").

Without deciding whether the determination of damages and fees under the federal statutory claims would be governed by Thailand or federal common law, the court can conclude that this public interest factor favors litigating this case in Thailand. If Thailand law applies, the court will be applying foreign law to all the claims. The need to apply foreign law points toward dismissal. *Piper,* 454 U.S. at 260 & n.29 (citing decisions holding that need to apply foreign law, although not conclusive, favors dismissal). If federal common law applies, and if it does not dictate that the court follow Thailand law, then two different sets of substantive law would apply in the same case, a problem that *Piper* recognized. *See id.* at 260 (holding that district court properly considered that trial involving two sets of laws would be confusing to jury). If the case were tried in Thailand, the Thailand court would apply its own law under its conflict of law rules.

The court therefore holds that this factor favors litigating the case in Thailand.

VI

The court now addresses Boonma's argument that dismissal of this case on the grounds of *forum non conveniens* would frustrate Congress' intent to provide foreign victims of illicit sexual conduct a civil remedy in United States district courts. Boonma correctly points out that Congress is presumed to be aware of existing law when it enacts legislation. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). She argues that, because Congress

- 18 -

intended to provide sex crime victims, such as her son, with a civil remedy, and because Congress is presumed to have been aware of the doctrine of *forum non conveniens*, it must have intended to abolish the doctrine in this context.  The court disagrees.

Absent a clear Congressional manifestation of contrary intent, when a court construes a newly-enacted or revised statute, it presumes that the law is harmonious with existing law.  *See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.,* 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." (citation omitted)); *United States v. Langley,* 62 F.3d 602, 605 (4th Cir. 1995).  Boonma points to no clear Congressional intent to abolish the doctrine of *forum non conveniens* in the present context.

Neither would dismissal of this case on *forum non conveniens* grounds implicitly violate Congressional intent by rendering § 2255 a nullity.  Boonma selectively quotes passages from 18 U.S.C. § 2423 that prohibit travel in foreign commerce for the purpose of engaging in illicit sexual conduct to argue that § 2255, which provides a civil remedy for violations of § 2423, would be meaningless if the cases of foreign plaintiffs could be dismissed based on *forum non conveniens*.  This assertion depends on the faulty assumptions that many, if not all, plaintiffs who sue under § 2255 are foreign and that many, if not all, cases brought by foreign plaintiffs will be dismissed on *forum non conveniens*

- 19 -

grounds.

Boonma begins by asserting that, by definition, the sexual abuse covered by § 2255, and specifically by § 2423, occurs overseas, and that the victims it is meant to protect are "without exception foreign children." P. Br. at 1. The court disagrees. Section 2255 provides a civil remedy for victims of a number of different sexual offenses, under statutes that prohibit a wide array of conduct by those traveling in interstate or foreign commerce or located in areas of federal jurisdiction, such as those within maritime or territorial jurisdiction or within a federal prison. *See* 18 U.S.C. §§ 2255, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, and 2423. Further, § 2423, the statute upon which Boonma relies, prohibits not only United States citizens traveling in foreign commerce, but also persons traveling in interstate commerce or traveling into the United States, from engaging in illicit sexual conduct. *See* 18 U.S.C. § 2423(b). Boonma does not support her contention that victims of offenses for which § 2255 provides a civil remedy are necessarily all, or even mostly, foreign children.

Nor does it follow that the suits of all foreign plaintiffs who sue under § 2255 will be subject to dismissal based on the doctrine of *forum non conveniens*. For instance, a foreign plaintiff's home forum might not provide a cause of action for the conduct alleged, or the available remedy might be so inadequate that it could not be considered a remedy at all, in which case the plaintiff's case would not be dismissed. *See supra* § II. Indeed,

dismissal on *forum non conveniens* grounds is conditioned upon the existence of an adequate and available alternative forum, *see id.*, so there is nothing inconsistent about Congress' intending to ensure that juvenile victims of sex crimes, including foreign victims, have a private cause of action, while preserving the doctrine of *forum non conveniens* in this context.

The court therefore declines to accept the argument that Congress intended to abolish the doctrine of *forum non conveniens* in this context by providing a cause of action under § 2255.

VII

The court now considers Boonma's contention that public policy dictates that the court retain jurisdiction. Boonma asserts that the Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 112 Stat. 2974 (1998), which expanded the number of sex crimes for which victims could seek a civil remedy, and the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act, Pub. L. No. 108-21, 117 Stat. 650 (2003), which strengthened criminal penalties against offenders, as well as comments by the President and Secretary of State, evidence increased public concern to defeat the international sexual exploitation of children and hold sexual predators accountable. Boonma maintains that dismissing this case would clearly disregard United States public policy expressed by Congress and the Executive Branch.

Although the court recognizes that Congressional enactments and Administration policy evidence the intent to combat sex crimes

against minors, it is not clear that dismissing this case in deference to a Thailand forum will thwart that intent. Dismissal on *forum non conveniens* grounds is conditioned on the existence of an adequate and available alternative forum. *See supra* § II. Where, as here, there is such a forum, the policy of deterring sexual exploitation of minors by holding them financially accountable will be served, regardless whether the court retains jurisdiction over this case.

The court therefore finds unpersuasive Boonma's argument that dismissal of this case would contravene public policy.

VIII

Having considered both the private and public interest factors, the court holds that Bredimus has made the strong showing necessary to justify dismissing this case on grounds of *forum non conveniens*, because the balance of convenience tilts strongly in favor of litigating the case in Thailand. Thailand is an available and adequate forum. The private interest factors, particularly the location of evidence and the cost of obtaining attendance of witnesses, indicate that Thailand is clearly the more convenient forum. In addition, the public interest factors favor litigating this dispute in Thailand. Although there is no evidence of a relatively greater administrative burden in this court than in Thailand, there is strong evidence that the nexus of the case is in Thailand. Boonma is Thai, all the conduct that gives rise to the case occurred in Thailand, the people of Thailand have a considerably stronger interest in the outcome of the case than do

those of Texas, and Thailand law would apply at least to one of Boonma's claims, even if this court retained jurisdiction. The only connection to Texas is that the defendant, who is now incarcerated in Kentucky, was a Texas resident at the time he was traveling abroad in Thailand.

Additionally, to deny defendant's motion to dismiss based on *forum non conveniens*, this court would be required to disagree explicitly with Chief Judge Fish's assessment in *Punyee* of the factors that apply in very similar circumstances. The court is quite hesitant to do so under the circumstances presented here, where the availability and adequacy of an alternative forum, as well as the relevant public and private interest factors, are essentially identical in each case. Were the court to deny the motion to dismiss, the plaintiff in this case would be allowed to litigate in her chosen forum whereas the plaintiffs in *Punyee* would be required to litigate in Thailand, despite the essentially-identical factual scenarios presented by the two cases.

IX

Because the court has decided in favor of dismissal, it must include a return jurisdiction clause in its dismissal order to ensure that the "plaintiff can reinstate [her] suit in the alternative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum." *Air Crash,* 821 F.2d at 1166; *see Baris*, 932 F.2d at 1551-52. Today's judgment of dismissal is conditioned on Bredimus' timely submitting

- 23 -

to service of process and jurisdiction in the appropriate Thailand forum upon Boonma's filing suit, waiving any statute of limitations defense that did not exist before Boonma filed this lawsuit on April 5, 2005 (provided Boonma files suit in an appropriate Thailand forum within 120 days from the date of judgment), making available for the Thailand court proceedings all relevant documents and witnesses within his control, and agreeing that any final judgment rendered by the court of Thailand is entitled to full faith and credit in the courts of the United States. *See Baris*, 932 F.2d at 1551 (holding that district court may determine the conditions of dismissal). Boonma may move this court to reinstate this action in the event Bredimus seeks to evade the jurisdiction of the Thailand courts or to interpose a limitations defense.

\*     \*     \*

Defendant's May 9, 2005 motion to dismiss on grounds of *forum non conveniens* is granted.

**SO ORDERED**.

July 29, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE